UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GUSTAV J. BUCHHOLZ, | AMENDED CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:18-cv-00607-GJQ-RSK |
| MEYER NJUS TANICK, PA, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## FIRST AMENDED COMPLAINT

NOW comes GUSTAV J. BUCHHOLZ ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of MEYER NJUS TANICK, PA ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within the Western District of Michigan and a substantial portion the events or omissions giving rise to the claims occurred within the Western District of Michigan.

### PARTIES

1

4. Plaintiff is a 70 year old natural "person," as defined by 47 U.S.C. §153(39), residing in Spring Lake, Michigan, which lies within the Western District of Michigan.

5. Defendant is a debt collection law firm that specializes in the collection of debts owed to third parties. Defendant is a professional corporation organized under the laws of the state of Minnesota with its principal place of business located at 330 Second Avenue South, Suite 350, Minneapolis, Minnesota.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. The instant action arises out of Defendant's attempts to collect upon several outstanding consumer debts ("subject debt") said to be owed by Plaintiff.

9. The subject debts each stem from various past due payments Plaintiff is said to owe on certain accounts he had with Synchrony Bank.

10. On or about May 9, 2018, Defendant sent Plaintiff a "dunning" letter in order to collect upon one of the subject debts.

11. The dunning letter's salutation reads "Very truly yours," and is signed by one of Defendant's attorneys, "Kara L. Harms."

12. As such, this first dunning letter represented that it was sent by Ms. Harms after she had engaged in a meaningful review of Plaintiff's account prior to sending the letter.

13. On the same May 9, 2018 day, Plaintiff received an identical "dunning" letter to collect upon another one of the subject debts, including the representation that this letter was from and was reviewed by attorney Kara L. Harms.

14. Given the clear similarities between the letters Plaintiff received, the letters are clearly formulaic in nature.

15. The only differences between the letters are the information regarding the specific account the letter was referencing.

16. As such, Defendant would need only engage in a simple cut and paste exercise in order to appropriate these formulaic letters to other original creditors, accounts, or purported debtors.

17. Additionally, although the two letters Plaintiff received appear to contain a Ms. Harms' "wet" signature (i.e., that Ms. Harms herself signed the letter), a simple review of the signatures shows that each signature is precisely the same.

18. Because each signature is exactly the same, it is clear that Ms. Harms' signature on these documents was not the result of her individually signing each document, but was instead inserted into the letters from some sort of pre-populated or stock signature.

19. The automated nature of these letters is further demonstrated by the existence of a bar code on the bottom of each collection letter, as this bar code is likely included as a way to more readily track the mass amount of collection letters Defendant sends to consumers on a daily basis.

20. If Defendant's attorney actually put forth the necessary time and effort to sufficiently review the letters, there would be little need to utilize a bar code to track the sending of these letters, as such attorney would inherently keep a record of the letters sent in relation to the account(s) that were reviewed.

21. Further, all of the letters serving as the basis of the instant complaint are related to accounts Plaintiff originally had with Synchrony, which is one of the largest banks and credit card issuers in the United States.

22. As one the largest banks and credit card issuers in the United States, it stands to reason that it has a proportionally large number of accounts that are subjected to collection activities by third party debt collectors.

23. Because Synchrony clearly works with Defendant on a regular basis, it follows that Defendant is sending a large number of collection letters to consumers on a daily basis, especially when considering the clearly formulaic nature of Defendant's letters.

24. Even further, both of the letters Plaintiff received were sent from Ms. Harms, who works out of Defendant's office in Detroit.[1]

25. As such, both of the letters Plaintiff received were presumably sent from Defendant's Detroit office.

26. Defendant's website demonstrates that Ms. Harms is the *only* attorney that works out of its Detroit office.[2]

27. As such, Ms. Harms would have been the only attorney reviewing the collection letters sent to Plaintiff.

28. Assuming, *arguendo,* that it takes approximately 15 minutes for an attorney to sufficiently review a debtor's file prior to determining to send a particular letter,[3] Ms. Harms would have had to spend a half hour of her day reviewing Plaintiff's accounts to determine to send the letters.

---

[1] As a note, the collection letters identify that Defendant has offices in Southfield, Michigan. It seems as though the Southfield office indicated in the letters, and the Detroit office indicated on Defendant's website, are one in the same.
[2] https://meyernjus.com/professionals/
[3] *See e.g., Boyd v. Wexler,* 275 F.3d 642 (7th Cir. 2001).

29. It is unlikely that Ms. Harms devoted this much time to Plaintiff's accounts, let alone the additional letters she sends out on a daily basis.

30. Upon information and belief and in consideration of the above stated facts, the attorneys purportedly sending the collection letters to Plaintiff send out hundreds of such collection letters per day without engaging in a meaningful review of the underlying accounts prior to determining whether to send the collection letters.

31. Defendant purports that these letters have been reviewed by an attorney in order to exert pressure upon Plaintiff and consumers generally, and compel them into making payment out of fear that Defendant, a law firm, will file a lawsuit against them if payment is not made.

32. As a result of Defendant's misrepresentations regarding the extent to which an attorney reviewed the collection letters prior to sending them to Plaintiff, Plaintiff felt an undue sense of anxiety that he would be subjected to legal action if prompt payment was not made.

33. Because of this undue anxiety, Plaintiff conferred with his counsel regarding the nature of Defendant's collection letters.

## COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

34. Plaintiff repeats and realleges paragraphs 1 through 33 as though fully set forth herein.

35. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

36. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

37. Defendant identifies itself as a debt collector, and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

38. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

   a.  **Violations of FDCPA § 1692e**

39. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

40. In addition, this section enumerates specific violations, such as:

> "The false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §1692e(10).

41. Defendant violated 15 U.S.C. §§ 1692e, e(3), and e(10) by sending collection letters to Plaintiff suggesting that such letters were from, and reviewed by, an attorney. Upon information and belief, the attorneys that sign the collection letters issued to Plaintiff send hundreds of collection letters on a daily basis. Based on the sheer volume of collection letters Defendant's attorneys send on a daily basis, Defendant's attorneys could not have engaged in a meaningful review of each collection letter sent and the underlying account(s) associated with those letters. Sending form collection letters said to be from an attorney when such attorney did not engage in a meaningful review of the letter and associated accounts falsely implies that such attorney has reviewed the file and made the professional, considered determination to send the letter. Instead, the lack of sufficient review and the lack of any attorney judgment as to whether to send collection letters is in violation of the FDCPA.

42. Misrepresentations that debt collection correspondences are sent from an attorney who sufficiently reviewed the accounts associated with such correspondence get to the heart of what

the FDCPA was designed to redress – abusive debt collection practices. It is undoubtedly abusive for a debt collector to falsely suggest that its collection letters were sent after being reviewed by an attorney. This abusive debt collection practice has the impact of instilling an undue[4] sense of urgency in consumers – an injury which the FDCPA was designed to redress. Plaintiff suffered this injury that the FDCPA was designed to redress, as the anxiety and concerns which came about as a result of thinking he was being sent debt collection correspondences from an attorney licensed in the state of Michigan resulted in Plaintiff conferring with his counsel regarding the letters.

WHEREFORE, Plaintiff, GUSTAV J. BUCHHOLZ, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Statutory damages under 15 U.S.C. § 1692k(a);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3); and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: July 31, 2018                                  Respectfully submitted,

s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Western District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

s/ Nathan C. Volheim

---

[4] Plaintiff is not arguing that the FDCPA does not allow *some* pressure to be placed on consumers. Instead, it is the *undue* pressure that comes about by Defendant's misrepresentations that demonstrate the extent to which the FDCPA was designed to address these specific harms.

Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/ Taxiarchis Hatzidimitriadis
Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff
Admitted in the Western District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x110 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com