IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUSTAV J. BUCHHOLZ,

    Plaintiff,

vs.

Case No. 2:18-cv-00607
Hon. Gordon J. Quist

MEYER NJUS TANICK, PA,

    Defendant.
_____/

**DEFENDANT'S BRIEF IN SUPPORT OF RULE 12(B)(1) AND 12(B)(6)
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Gustav J. Buchholz filed a one count amended complaint under 15 U.S.C. §1962e(3), alleging that two collection letters he received from Meyer Njus Tanick, P.A. ("MNT") were signed by an attorney who did not "meaningfully review" the circumstances of Mr. Buchholz's debts before sending the letters. *See* First Amended Complaint ("Complaint"), ECF 12, PageID 47 – 54. The allegations are the type of bare boned legal conclusions that no longer satisfy the pleading requirements of Rule 8. Moreover, Mr. Buchholz failed to allege that he suffered an actual injury caused by the purported misrepresentation of "meaningful attorney involvement." This suit does not even rise to the level of a nuisance suit. Rather, it is the knee-jerk litigious reaction to legitimate collection activity the Sixth Circuit described in *Miller v. Javitch, Block & Rathorne*, 561 F.3d 588, 596 (6th Cir. 2009). It must be dismissed, with prejudice, accordingly.

**A. FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT.**

Mr. Buchholz received two collection letters from MNT on May 9, 2018, each referencing a separate debt Mr. Buchholz owed Synchrony Bank. *See* Complaint at ¶¶10, 13,

ECF12, PageID 48, 49. The letters are attached as Exhibit A and Exhibit B.[1] Mr. Buchholz does not deny that he owes the debts nor does he contend that the amount of the debts listed in the letters is incorrect. Rather, he alleges that the letters were sent by an attorney at MNT although "it is unlikely" that the attorney who signed the letter "devoted" sufficient time to reviewing Mr. Buchholz's accounts before sending the letters. *See* Complaint at ¶29, ECF 12, PageID51. Mr. Buchholz makes this allegation on information and belief, because:

- Synchrony is "one of the largest banks and credit card issuers in the country."
- The letters were signed by the same attorney in what appeared to be a computer generated signature;
- The letters have a barcode at the bottom;
- The letters are substantially similar;
- The attorney who signed the letters is the only attorney who works at MNT's Michigan office.

*See* Complaint at ¶¶14; 17; 19; 22; 26, ECF 12, PageID 49 - 50.

## B. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS DISPUTE.

### 1. Legal standard.

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lujan v. Defendants of Wildlife,* 504 U.S. 555, 561 (1992). At the pleading stage, this burden consists of "clearly" alleging facts that demonstrate each element of standing. *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016). "To satisfy the 'irreducible minimum of standing,' the plaintiff must establish that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the

---

[1] The Court may consider both documents from a public record and exhibits attached to a Rule 12(b)(6) motion if the exhibits "are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

injury can likely be redressed." *Lyshe v. Levy,* 854 F.3d 855, 857 (6th Cir. 2017), citations omitted. " When faced with a challenge to subject matter jurisdiction, "a court must address that issue before all others." *Cain v. Redbox Automated Retail, LLC,* 981 F. Supp. 2d 674, 681 (E.D. Mich 2013)(collecting cases).

### 2. Plaintiff has not suffered an actual injury.

Pursuant to Article III of the United States Constitution, federal jurisdiction is limited to "cases and controversies," and standing is "an essential and unchanging part of" this requirement. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). If the plaintiff lacks standing, the federal court lacks jurisdiction. Thus, standing is "the threshold question in every federal case." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).

In *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016), the Supreme Court addressed the "[f]irst and foremost" of standing's three elements, *i.e.* that the plaintiff had to show that he or she suffered harm that was "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. *Spokeo* clarified a plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spoke,* 136 S. Ct. at 1549. Specifically, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id,* (citing *Summers v. Earth Island Institute,* 555 U.S. 488, 496 (2009) and *Lujan,* 504 U.S. at 572). As the Sixth Circuit recently held:

> Although Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is. *Hagy v. Demers & Adams,* 882 F.3d 616, 622 (6th Cir. 2018), citations omitted.

3

2190115

Here, Mr. Buchholz's alleged injury is that he felt an "undue sense of anxiety that he would be subjected to legal action of prompt payment was not made." *See* Complaint at ¶32, ECF 12, PageID 51. This "injury" would only be linked to a §1692e(3) violation if Mr. Buchholz had alleged that MNT does not file suits on behalf of Synchrony. A quick review of the public record demonstrates that MNT in fact does file suits on behalf of Synchrony to collect amounts in the range Mr. Buchholz owes. *See e.g.* Collection Complaints at Exhibit C. The anxiety attendant to his belief that he would be subject to legal action was not "undue," but real. It is not an injury caused by the alleged misrepresentation concerning the level of attorney involvement. Put another way, anxiety about legal action that can be taken is not "the type of harm the FDCPA was designed to prevent." *Lyshe v. Levy*, 854 F.3d 855, 859 (6th Cir. 2017). *See also, Harvey v. Great Seneca Financial*, 453 F.3d 326, 330 - 331 (6th Cir. 2009) ("*Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by [plaintiff] Harvey cannot be said to be an abusive tactic under the FDCPA.).

This issue of "injury" in a case brought under §1692a(3) was recently addressed by two district courts, each of which determined that, like Mr. Buchholz in this case, the plaintiffs failed to adequately plead that they were harmed by the alleged misrepresentation. In *Newman v. Encore Capital Group,* Case No. 16-CV-11395, 2017 WL 3479510 (E.D. Mich., August 14, 2017), the court considered a complaint that contained detailed allegations of misleading representations made in state court collection complaints, including the submission of complaints signed by attorneys without any meaningful review. *Id.* at * 7. The *Newman* court found that these allegations insufficient to establish plaintiffs' standing: "Plaintiffs do not allege that their receipt of this allegedly-false information caused them *any* harm—much less harm that the

4

2190115

FDCPA was designed to prevent." *Id.*

Similar allegations were made against the attorney debt collectors in *Cheslek v. Asset Acceptance Capital Corp.,* Case No. 16-CV-1183, 2017 WL 7370983 (W.D. Mich., December 22, 2017). The plaintiff in *Cheslek* alleged that the complaint filed against him was not reviewed by the attorney who signed it and were supported by false affidavits, causing him stress and to incur "out-of-pocket" expenses. *Id* at *2. Relying on *Lyshe,* the *Cheslek* court found that these allegations were not sufficient to establish an "actual injury:"

> While Plaintiff makes vague reference in his Response to the harms of 'stress and out of pocket costs,' he does not identify the costs at issue, nor does he correlate the alleged harms to any allegations in his Amended Complaint. As Defendants point out in Reply (ECF No. 41 at PageID.890), any stress or expenses he incurred would have been the result of having to defend a lawsuit that was properly filed to collect the $3,468.71 debt that Plaintiff failed to pay, i.e., not a concrete injury 'fairly traceable to the challenged action of the defendant.'

*Id* at * 3.

The same result is warranted here. While Mr. Buchholz contends that a letter that appears to be from an attorney when it is not can force consumers to pay debts out of "fear" that the attorney will file suit if the debt is not paid, he does not allege that *he* made a payment he would otherwise not have made because of MNT's allegedly false representation of meaningful attorney involvement in the collection process, nor does he allege any other injury *to him* caused by the letter. *See* Complaint at ¶31, ECF 12, PageID 51. This failure is fatal to his efforts to bring his claims in this Court.

Pleading a violation of the FDCPA alone is no longer enough to create subject matter jurisdiction in this court. Under *Lyshe* and its progeny, a plaintiff has not demonstrated that he in fact was injured by the alleged FDCPA violation. Mr. Buchholz has not done so and its

5

2190115

Complaint must be dismissed.

### C. PLAINTIFF FAILS TO STATE A CLAIM.

Even if this Court had jurisdiction over Plaintiff's claims, it should dismiss the Complaint because it fails to state a claim.

#### 1. Legal Standard.

To show grounds for relief, the federal rules require that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Rule 8. While Rule 8 "does not require 'detailed factual allegations' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Pleadings offering mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

#### 2. The Complaint does not contain sufficient facts to support an inference that MNT violated §1693(a)(3).

Mr. Buchholz's allegations that the MNT did not "meaningfully review" the collection letters before sending them do not satisfy Rule 8. When stripped of their legal conclusions, the allegations concerning attorney involvement are limited to "MNT's client issues a lot of credit cards and hires a lot of debt collectors" and the letter was a "form" letter. These allegations are not sufficient to state a claim under §1692e(3) because they do not "nudge" the pleading "across the line from the conceivable to the possible." *Twombly,* 550 U.S. at 570, cited in *Thebert v. Potestivo & Assoc.,* Case No. 16-CV-14341, 2017 WL 3581322 (E.D. Mich. Aug. 18, 2017) at *

6

11. *See also Barata v. Nudelman, Klemm & Golub, P.C.*, 13-CV-4274, 2015 WL 733628 (D. N.J. February 19, 2015)

In *Thebert*, the plaintiff alleged that the attorney "could not have" meaningfully reviewed a collection letter because the letter was computer generated and mass produced and failed to breakdown the specific amounts owed, something an attorney would have done had he or she "meaningfully reviewed" the letter. *Id* at *10. The *Thebert* court found these allegations insufficient because they did not include any specific "factual allegations about the law firm's debt collection process." *Id* at *11. Here, Mr. Buchholz merely notes that MNT's client is a large bank that refers a lot of debt to third-parties for collection across the county, but does not plead any information concerning the volume of work *MNT* does for that client, let alone the process MNT has for reviewing files prior to sending collection letters.[2]

In *Barata,* as in this case, the plaintiff alleged that the volume of letters issued by an office "must have" made meaningful review "impossible:"

> There is no allegation as to how many collection letters NKG actually sent to debtors. The complaint does not even suggest an order of magnitude, referring to the volume of letters as simply a 'number,' implying that it must be a large 'number.' But that number, whatever it is, is simply said to be the subject of future 'inquiry,' presumably in discovery. There is no allegation as to how many attorneys may have worked on the letters, over what period of time. The Complaint is based on nothing more than the 'belief that after inquiry that [*sic* ] it will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'

*Barata,* 2015 WL 733628 at * 4. Mr. Buchholz attempts to bolster his vague allegations of volume by pointing to a bar code on the bottom of the letter and the fact that the letters were forms. The letters are "form" letters because they set forth the requirements of §1692g and if

---

[2] This information is publicly available, had Mr. Buchholz bothered to look before alleging – with no information or good faith belief – that MNT's attorneys did not made an independent determination as to whether a collection letter should be sent. *See e.g. Deari v. Meyer & Njus,* Case No. 14-CV-0065, U.S. District Court for the Western District of Wisconsin, ECF 8.

7

2190115

MNT varied from the text of that statute, it would probably be sued for violating the FDCPA. The bar codes refer to the account number, as demonstrated by the fact that the account number is repeated in the numbers under the bar code. Plaintiffs fail to suggest why these attributes of the letters suggest lack of meaningful attorney involvement.

As in *Thebert,* there are no specific allegations concerning MNT's collection process and, therefore, no viable allegations concerning attorney involvement. Under *Barata,* vague allegations of "volume" do not take the case from the possible to the probable. If this complaint is allowed to stand on these allegations, every consumer who receives a letter setting forth a debtor's rights under §1692g relating to a debt owed to a national bank can sue on the theory that no attorney "meaningfully reviewed" the letter. *Twombly* and *Iqbal* demand more. There must be material facts pled to support Mr. Buchholz's "belief" that no MNT attorney was involved in the collection process, because "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon and Propoxyphene Products Liability Cases,* 756 F.3d 917, 930 (6th Cir. 2014). The fact that MNT's client is a large bank is simply not enough to create a pliable inference that MNT was not meaningfully involved in the collection process. The allegations are not sufficient to state a claim under §1692e(3).

D.   **CONCLUSION.**

Mr. Buchholz filed this suit because he does not want to pay the debts he owes Synchrony. He is an example of "the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled." *Miller,* 561 F.3d at 596; *Federal Home Loan Mortgage v. Lamar,* 503 F.3d 504, 513 (6th Cir. 2007). As the *Miller* and *Lamar* courts noted,

> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ('LSC') makes a $ 400 purchase. His debt remains unpaid and

undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims 'This clearly runs afoul of the FDCPA!' and-rather than simply pay what he owes-repairs to his lawyer's office to vindicate a perceived 'wrong.' '[T]here comes a point where this Court should not be ignorant as judges of what we know as men.' [citation omitted].

*Miller,* 561 F. 3d at 596; *Lamar,* 503 F.3d at 513, citations omitted.

This case is utterly without merit and must be dismissed for lack of subject matter jurisdiction and, alternatively, for failure to state a claim.

> Respectfully submitted,
>
> MADDIN HAUSER ROTH
> & HELLER, P.C.
>
> */s/ Kathleen H. Klaus*
> Kathleen H. Klaus (P67207)
> Attorneys for Defendant
> 28400 Northwestern Hwy, 2nd Floor
> Southfield, MI 48034
> (248) 359-7520
> kklaus@maddinhauser.com

Dated: August 15, 2018

### CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2018, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

> */s/ Kathleen H. Klaus*
> Kathleen H. Klaus (P67207)
> Attorneys for Defendant
> 28400 Northwestern Hwy, 2nd Floor
> Southfield, MI 48034
> (248) 359-7520
> Kklaus@maddinhauser.com

DATED: August 15, 2018

2190115