UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GUSTAV J. BUCHHOLZ,<br><br>Plaintiff,<br><br>v.<br><br>MEYER NJUS TANICK, PA,<br><br>Defendant. | Case No.: 2:18-cv-00607<br><br>Honorable Judge Gordon J. Quist |

**PLAINTIFF'S RESPONSE TO DEFENDANT MEYER NJUS TANICK, PA'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW comes GUSTAV J. BUCHHOLZ ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., responding to MEYER NJUS TANICK, PA's ("Defendant") Motion to Dismiss Plaintiff's First Amended Complaint ("Defendant's Motion"), and in support thereof states as follows:

**I.    INTRODUCTION**

Defendant, in a meagre attempt to attack Plaintiff's First Amended Complaint ("FAC"), argues that Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant's Motion argues that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has not satisfied the Article III requirement of standing. Defendant's position is incorrect, as the injury suffered by Plaintiff is the precise type of injury the FDCPA was designed to redress.

Defendant then argues that Plaintiff's claims fail to state a claim upon which relief can be granted because Plaintiff has failed to set forth sufficient factual allegations establishing that the collection letters sent to Plaintiff were sent absent sufficient attorney review. However, Defendant

1

overlooks the nature of Plaintiff's FAC and the facts asserted therein which, when accepted as true and drawing all inferences therefrom in a light most favorable to Plaintiff, demonstrate the extensively automated nature of Defendant's collection letters. Given the clearly automated nature of Defendant's collection letters, Plaintiff has set forth sufficient facts demonstrating he has plead a claim for relief under the FDCPA which is plausible on its face.

As such, Defendant's Motion should be denied in its entirety.

## II. **STATEMENT OF FACTS**

On or about May 9, 2018, Defendant sent Plaintiff two nearly identical collection letters attempting to collect upon two different debts Plaintiff is said to have with Synchrony Bank. [Plaintiff's FAC, Dkt. 12, ¶¶ 9-13]. Defendant is a collection law firm, and each of these collection letters was signed by attorney Kara L. Harms. [*Id.* at ¶¶ 5, 11-13]. The only difference between the two collection letters was the information regarding the specific Synchrony account each letter was referencing. [*Id.* at ¶ 15].

Given the similarities between the two letters, the letters are clearly formulaic in nature, and Defendant would need only engage in a simple cut and paste exercise in order to appropriate these formulaic letters to other original creditors, accounts, or purported debtors. [*Id.* at ¶¶ 15-16]. Further, the signature on each of the collection letters is precisely the same, demonstrating that the signature on the letters was a facsimile (i.e. electronic) signature. [*Id.* at ¶ 17-18]. In addition to the clearly formulaic nature of the two collection letters, each collection letter contains a barcode at the bottom, which would provide Defendant a way to readily and automatically track the formulaic collection letters it sends to consumers. [*Id.* at ¶ 19-20].

Beyond the nature of the letters themselves, the original creditor involved in both letters – Synchrony Bank – is one of the largest banks and credit card issuers in the United States. [*Id.* at ¶

21]. As one of the largest banks and credit card issuers in the United States, it stands to reason that it has a proportionally large number of accounts that are subjected to collection activities by third party debt collectors. [*Id.* at ¶ 22]. Because Synchrony clearly works with Defendant on a regular basis, it follows that Defendant is sending a large number of collection letters to consumer on a daily basis, especially when considering the clearly formulaic nature of Defendant's letters. [*Id.* at 23].

Additionally, the collection letters were sent from Defendant's Detroit offices, and Ms. Harms is the only attorney that works out of its Detroit office. [*Id.* at 24-27]. As such, Ms. Harms would have been the only attorney reviewing the collection letters sent to Plaintiff. [*Id.* at 27]. Given the amount of time that would be necessary to review Plaintiff's account, in combination with the seemingly mass amount of collection letters sent out on a daily basis, it is unlikely that Ms. Harms engaged in a sufficient review of Plaintiff's accounts before sending the letters. [*Id.* at ¶ 28-29].

Defendant's misrepresentations in the collection letters was done with the intent to exert pressure upon Plaintiff and consumers generally in order to compel them into making payment out of fear that Defendant, a law firm, will file a lawsuit against them if payment is not made. [*Id.* at ¶ 31]. As a result of these misrepresentations, Plaintiff felt an undue sense of anxiety that he would be subjected to legal action if prompt payment was not made. [*Id.* at ¶ 32].

III. **ARGUMENT**

    **A. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS DISPUTE**

        **1. Plaintiff has suffered an actual injury sufficient to establish Article III standing.**

3

Defendant argues that Plaintiff fails to meet the Article III requirement of standing by suggesting that Plaintiff's alleged injury was a "bare procedural violation" of the FDCPA, which is "divorced from any concrete harm." [Defendant's Motion at 3]. Defendant's position is incorrect, as the Sixth Circuit has made clear that when an injury resulting from an alleged statutory violation is the type of injury such statute was specifically designed to redress, then such injury is sufficient to satisfy the actual injury requirement for purposes of the Article III standing analysis.

Defendant's argument is premised in large part on the Supreme Court's holding in *Spokeo Inc. v. Robins,* 136 S.Ct. 1540 (2016). Fortunately, the Sixth Circuit had the occasion to interpret *Spokeo* in connection with alleged statutory violations in *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2009). In *Lyshe,* the plaintiff brought claims under the FDCPA stemming from the defendant's misrepresentations in connection with a state court lawsuit that had been initiated against Plaintiff. *Id.* at 858. Specifically, the plaintiff argued that the defendant's violation of various state rules of civil procedure made in connection with a debt collection lawsuit constituted a violation of the FDCPA. *Id.* From this, Plaintiff alleged that he suffered injury in that he "would have been required to visit a notary and contact [the defendant] to obtain electronic copies of the discovery." *Id.* at 859.

In determining whether the plaintiff had standing, the *Lyshe* court looked to *Spokeo.* In so doing, the *Lyshe* court stated:

> [T]though *Spokeo* allows for a bare procedural violation to create a concrete harm, the procedural violation alleged here – a violation of state law procedure not required under FDCPA – is not the type contemplated by *Spokeo,* which dealt with the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent.

4

*Id.* Relying on *Spokeo,* the court found that the harm the plaintiff suffered was not the type of harm the FDCPA was designed to prevent, and therefore found that the plaintiff lacked Article III standing.

As such, *Lyshe* stands for the proposition that when an alleged injury resulting from a statutory violation results in an injury which the statute was designed to redress, such injury will be sufficient to establish Article III standing. This reading of *Lyshe* is confirmed by its discussion of other cases where courts found that when a plaintiff alleges injury stemming from a statutory violation which such statute was designed to redress, standing will be found. *See id.* at 860-61 (discussing *Beck v. McDonald,* 848 F.3d 262, 271 n.4 (4th Cir. 2017), *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037, 1043 (9th Cir. 2017), *In re Horizon Healthcare Servs. Inc. Data Breach Litigaion,* 846 F.3d 625, 637-40 (3d Cir. 2017), and *McCullogh v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 946, 952 (9th Cir. 2011)).

Turning to the instant matter, the above discussion of *Lyshe* makes clear that Plaintiff will establish standing if the injury he suffered is the type of injury the FDCPA was designed to prevent. Despite Defendant's suggestion to the contrary, the harm suffered by Plaintiff is the precise type of harm the FDCPA was designed to redress.

"The goal of the FDPCA is to eliminate abusive debt collection practices." *Lyshe,* 854 F.3d at 859 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 577 (2010)). "A debt collection letter on an attorney's letterhead conveys authority and credibility" which creates an inherent intimidation in such correspondence *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989). "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's [correspondence] than to a debt collection agency committing the same practice." *Id.* When a collection letter is sent on

attorney letterhead in a mass produced fashion, courts have repeatedly found that such letters violate 15 U.S.C. §§ 1692e, e(3), and e(10) given the misrepresentation as to the extent of attorney involvement in the decision to send the letter. *See, Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993) (noting "the use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent" and that such attorney "signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent," adding that "[i]n a mass mailing, these implications are frequently false").[1] Courts have further noted the extent to which consumers more readily respond to a collection letter that is sent from an attorney, as opposed to one from a collection agency. *Crossley,* 868 F.2d at 570.

Taking this authority together, in combination with the plain language of 15 U.S.C. § 1692e(3), it is clear that the FDCPA was designed to address the false representation that a letter was sent from an attorney. *Napolitano v. Ragan & Ragan,* 2017 U.S. Dist. LEXIS 131335, at *17-18 (D.N.J. Aug. 17, 2017) ("In this case, it is evident that Plaintiff alleges a particularized and concrete injury, namely that the debt collection letter sent to Plaintiff was allegedly deceptive by falsely implying that an attorney had meaningfully reviewed the case. Plaintiff avers that particular conduct violates the FDCPA. Indeed, Plaintiff has a substantive, and not merely procedural, statutory right under the FDPCA to be free from receiving allegedly false or deceptive information relating to the collection of a debt. Because of the alleged violation, Plaintiff was placed at risk of economic injury by potentially being deceived. Accordingly, Plaintiff has standing to bring suit).

---

[1] *Clomon* also noted that, given the extent to which representation of attorney involvement in mass mailings results in misrepresentations, "there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e." *Id.* at 1321.

Turning to the instant matter, it should be clear that the harm suffered by Plaintiff stemming from Defendant's misrepresentations is sufficient to establish Article III standing. The FDCPA was clearly designed to address misrepresentations by attorneys made in connection with the collection of debts, including misrepresentations that collection letters were reviewed by an attorney prior to being sent. As such, any injury that follows from such representation, including undue fear and anxiety stemming from attorney involvement with the debt, will be sufficient to establish Article III standing under *Spokeo* as interpreted by *Lyshe*. *See also, Medina v. AllianceOne Receivables Mgmt., Inc.,* 2017 U.S. Dist. LEXIS 7325, at *1 (E.D. Pa. Jan. 19, 2017) (finding where sentence in debt collection letter was found deceptive or misleading under Section 1692e so as to survive a motion to dismiss, "[t]he deceptive declaration in the letter . . . creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer . . . The FDCPA was enacted to provide redress for such a result."); *Bautz v. ARS Nat'l Servs., Inc.,* 226 F. Supp. 3d 131 (E.D.N.Y. Dec. 23, 2016) ("[A]dequately alleging a false, deceptive, or misleading representation under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt pracices"); *Kaymark v. Udren Law Offices, P.C.,* 2017 U.S. Dist LEXIS 171061 (W.D. pa. Dec. 12, 2016) ("The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt.").

Defendant attempts to make the argument that the injury Plaintiff suffered is not the type of injury that 15 U.S.C. § 1692e was designed to redress. Specifically, Defendant argues that Plaintiff's purported injury "would only be linked to a § 1692e(3) violation if Mr. Buchholz had

alleged that MNT does not file suits on behalf of Synchrony." [Defendant's Motion at 4]. Defendant's argument is unpersuasive. If Plaintiff's claim was brought under § 1692e(5), which prohibits false representations as to lawful ability or intent to initiate legal proceedings, then Defendant's argument would be more on point. However, that is the not the FDCPA provision Plaintiff is invoking. Instead, 1692e(3) (as well as 1692e and e(10)) was clearly designed to address misrepresentations that a communication is from an attorney. An injury that flows from such a misrepresentation, including the undue fear that attorney involvement may suggest more immediate legal action or potentially heightened legal ramifications, is sufficient to establish standing regardless of whether Defendant actually files lawsuits in connection with certain debts.

Defendant further cites to *Newman v Encore Capital Group,* 2017 WL 3479510 (E.D. Mich. Aug. 14, 2017), as well as *Cheslek v. Asset Acceptance Capital Corp.,* 2017 WL 7370983 (W.D. Mich. Dec. 22, 2017), to further support its standing argument. However, both of these cases dealt with alleged FDCPA violations stemming from collection lawsuits that had already been filed, and did not address collection letters from attorneys. More importantly, both of these cases followed *Lyshe* and found that the alleged harm suffered was not the type of harm that the FDCPA was designed to address. Because the instant matter involves a harm that the FDCPA was specifically designed to redress, Defendant's cited authority is clearly distinguishable and illustrates the unpersuasivness of Defendant's reliance on these opinions to support its position.

Therefore, because Plaintiff has sufficiently plead a concrete injury arising from Defendant's alleged misrepresentations, and such injury is the kind which the FDCPA was designed to redress, *Spokeo* and *Lyshe* demonstrate that Plaintiff has adequately plead actual injury that is concrete and particularized such that he has standing to proceed against Defendant under

the FDCPA. As such, Defendant's Motion should be denied to the extent it seeks dismissal of Plaintiff's FAC under Fed.R. Civ. P. 12(b)(1).

### B. PLAINTIFF HAS STATED A CLAIM WHICH IS PLAUSIBLE ON ITS FACE

#### 1. Legal standard

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010).

#### 2. Plaintiff's FAC contains sufficient facts to support an inference that MNT violated §1692e(3).

As an initial matter, Defendant's Motion seeking dismissal of Plaintiff's FAC under Fed. R. Civ. P. 12(b)(6) *only references Plaintiff's claims under 15 U.S.C. § 1692e(3).* [*See* Defendant's Motion at 6-8]. Defendant overlooks the additional claims brought against Defendant under 15 U.S.C. §§ 1692e and e(10). [Plaintiff's FAC, Dkt. 12, ¶¶ 39-41]. As such, it would be more proper to consider Defendant's Motion as a *partial* motion to dismiss, given Defendant's failure to articulate why Plaintiff's claims under § 1692e and e(10) fail.

9

Turning to the argument Defendant sets forth in its Motion, Defendant clearly misunderstands the distinction between a properly plead fact and a legal conclusion. Defendant believes that the only facts which have been plead which go towards establishing Defendant's violation of § 1692e(3) "are limited to 'MNT's client issues a lot of credit cards and hires a lot of debt collectors' and the letter was a 'form' letter." [Defendant's Motion at 6]. Defendant is patently incorrect and overlooks the nature of Plaintiff's FAC. Plaintiff has plead that he received two nearly identical collection letters on the same day, both signed by an attorney with Defendant. Given these similarities, the letters are clearly formulaic. Additionally, the signature on each of the collection letters is precisely the same, demonstrating that such signatures were a facsimile (i.e. electronic) signature. Further, each collection letter has a barcode on the bottom, which suggests a certain amount of automation in the sending of Defendant's collection letters. Furthermore, it is a fact that Synchrony Bank is one of the largest credit card issuers in the United States, and that Defendant sent both collection letters in connection with Synchrony debts. Additionally, Plaintiff has plead that the collection letters were sent by an office of Defendant which only has one attorney on staff. Despite Defendant's contentions to the contrary, the above facts in combination, taken as true and drawing all reasonable inferences therefrom in Plaintiff's favor, gives rise to a violation of the FDCPA which is plausible on its face.

The seminal case of *Clomon v. Jackson* had the occasion to determine whether mass mailed collection letters, which were signed by an attorney, constituted a violation of the FDCPA. 988 F.2d 1314. In *Clomon*, the Second Circuit found that mass mailed collection letters purportedly sent by an attorney constituted a violation of 15 U.S.C. §§ 1692e, e(3), and e(10). *Id.* at 1321. The court specifically noted:

> In reaching this conclusion, we are mindful of the appellant's concern regarding the economic necessity of mass mailing in the

> debt collection industry. It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets boundaries within which debt collectors must operate. **No mass mailing technique is permissible . . . if that technique constitutes a false, deceptive, or misleading communication. As we have found, the use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent. We have also found that the use of an attorney's signature implies – at least in the absence of language to the contrary – that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. <u>For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restriction imposed by §1692e.</u>**

*Id.* As *Clomon* suggests, whether and to what extent a collection letter that is signed by an attorney was disseminated as a result of a mass-mailing or otherwise automated process demonstrates that there was a violation of § 1692e(3). For purposes of motions to dismiss, courts have similarly noted that if the plead facts demonstrate that the collection letters were sent as a product of mass-produced collection letters, such allegations give rise to a plausible claim under §1692e(3). *See Napolitano v. Ragan & Ragan,* 2017 U.S. Dist. LEXIS 131335 (D.N.J. Aug. 17, 2017) (noting that allegations regarding number of attorneys working on the letters, *inter alia,* "could provide an impression that Defendant was sending out mass-produced collection letters with little or no review of the files in connection with those letters"). Courts have further noted that "letters containing electronically produced facsimile attorney signatures are inherently suspect." *Id.* (citing *Lesher v. Law Offices of Mitchell N. Kay, P.C.,* 650 F.3d 993, 1001-1003 (3d Cir. 2011)); *see also Gonzalez v. Kay,* 577 F.3d 600, 607 (5th Cir. 2009).

In reviewing the facts that Plaintiff has plead, and drawing all inferences therefrom in a light most favorable to Plaintiff, it is clear that Plaintiff has plead sufficient facts giving rise to claim for relief under the FDCPA which is plausible on its face. The fact that Plaintiff received two nearly identical collection letters on the same day signed by the same attorney gives rise to an inference that such letters were the result of a mass-produced collection campaign. Furthering the inference that Defendant's letters were sent as a result of a mass-produced campaign is the fact that both letters contain an identical electronic signature. Although courts have found that allegations regarding electronic signatures *alone* do not plausibly state a claim for relief under § 1692e(3), *see Napolitano,* 2017 U.S. Dist. LEXIS 131335, there are additional facts here which demonstrate the mass-mailed nature of Defendant's letters. One such fact is the barcode that is present on the bottom of Defendant's collection letters. The use of barcode generally is designed to provide a way to allow some sort of machine to extract data from a particular thing merely by scanning the barcode. As such, Defendant's use of a barcode gives rise to a reasonable inference that the use of such barcode was done in furtherance of Defendant's automated collection process and its ability to more readily track the mass-amount of collection letters it sends to consumers.

Furthermore, the fact that Defendant was collecting on behalf of one of the largest creditors in the country further demonstrates the inference that the letters were sent as the result of a high volume, mass produced campaign. Given the size of Synchrony and the fact that Plaintiff received two collection letters on the same day in reference to Synchrony accounts, an inference arises that Defendant is sending a massive amount of Synchrony related collection letters on a daily basis, as evinced by the fact that Plaintiff received two such letters on the same day. Adding to the plausibility of Plaintiff's claims are the allegations that the collection letters were sent by an office in which only one attorney was working. Courts have repeatedly noted that the number of lawyers

staffed to review collection letters is a relevant inquiry in determining whether a complaint has plead sufficient facts giving rise to a claim under § 1692e(3). *See*, *Lopez v. Law Offices of Faloni & Assocs., LLC,* 2016 U.S. Dist. LEXIS 124730 (D.N.J. Sep 14, 2016). The fact that only one attorney could have reviewed these letters bolsters the notion that there was a lack of sufficient review of the letters before they were sent.

Taking all of the above facts and the inferences derived therefrom, the Court should find that Plaintiff has plead sufficient factual allegations giving rise to a plausible claim under § 1692e(3). Defendant's reliance on *Thebert* and *Barata* should be deemed unavailing, given the significant differences between the extent of the facts plead in those cases when compared to the instant allegations. Here, Plaintiff advances significantly more factual assertions regarding the letters themselves, as well as Defendant's automated collection processes, which more conclusively establish the plausibility that Defendant's mass produced collection letters were sent absent sufficient attorney review.

Therefore, the Court should deny Defendant's Motion to the extent it seeks dismissal of Plaintiff's claims under 15 U.S.C. § 1692e(3) pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. **CONCLUSION**

As set forth herein, Plaintiff's FAC sufficiently pleads actual injury such that he has Article III standing to pursue his claims. Plaintiff's FAC further presents sufficient factual allegations which, when taken as true drawing all reasonable inferences therefrom in Plaintiff's favor, illustrate that Plaintiff has stated plausible claims against Defendant for violations of the FDCPA. Plaintiff's complaint is well plead and Defendant's motion should be denied in its entirety. Alternatively, in the event any of Plaintiff's claims are found to warrant dismissal, this Court should allow Plaintiff leave to amend his FAC.

WHEREFORE, Plaintiff, GUSTAV J. BUCHHOLZ, respectfully requests this Honorable Court enter an order denying Defendant's Motion in its entirety and for any other relief just and appropriate.

Dated: September 12, 2018                              Respectfully submitted,

                                                      s/Nathan C. Volheim
                                                      Nathan C. Volheim, Esq. #6302103
                                                      Counsel for Plaintiff
                                                      Admitted in the W.D. Michigan
                                                      Sulaiman Law Group, Ltd.
                                                      2500 South Highland Ave., Suite 200
                                                      Lombard, Illinois 60148
                                                      (630) 568-3056 (phone)
                                                      (630) 575-8188 (fax)
                                                      nvolheim@sulaimanlaw.com

# CERTIFICATE OF SERVICE

      The undersigned, one of the attorneys for Plaintiff, certifies that on September 12, 2018, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE TO MEYER NUS TANICK'S MOTION TO DISMISS PLAINTIFF'S FAC** to be served electronically via CM/ECF system on:

Maddin Hauser Wartell Roth & Heller PC
Attn: Kathleen H. Klaus
28400 Northwestern Hwy, 2nd Fl.
Southfield, MI 48034
kklaus@maddinhauser.com

                Respectfully submitted,

                s/ Nathan C. Volheim
                Nathan C. Volhiem, Esq. #6302103
                Counsel for Plaintiff