IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUSTAV J. BUCHHOLZ,

    Plaintiff,

vs.

                            Case No. 2:18-cv-00607
                            Hon. Gordon J. Quist

MEYER NJUS TANICK, PA,

    Defendant.

_____/

**DEFENDANT'S REPLY IN SUPPORT OF RULE 12(B)(1) AND
12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Gustav J. Buchholz dedicates most of his response brief to the unremarkable position that 15 U.S.C. §1692e(3) creates a cause of action for a consumer injured by a communication that appears to be from an attorney when it is not. Mr. Buchholz does not plead that *he* was injured by this alleged misrepresentation, however. His asserted injury was a different one, *i.e.* he felt "undue anxiety" that he was going to be sued if he did not make a "prompt payment." *See* First Amended Complaint at ¶32, ECF 12, PageID 51. The "undue anxiety" is not an injury triggered by a misrepresentation as to the level of attorney involvement; it is the type of reaction anyone would have upon receipt of a communication concerning a defaulted debt and therefore not an "injury" under the FDCPA. *Harvey v. Great Seneca Financial,* 453 F.3d 326, 330 - 331 (6th Cir. 2009) ("*Any* attempt to collect a defaulted debt will be unwanted by a debtor . . . ."). In other words, while it is possible for a consumer to plead a particularized and concrete injury based on a violation of §1692e(3), Mr. Buchholz – dispute trying twice – has failed to plead facts that suggest *he* suffered this type of injury. His case must be dismissed, accordingly.

2205037

1

### A. Mr. Buchholtz did not allege that he suffered a harm caused by the alleged misrepresentation concerning the level of attorney involvement.

Mr. Buchholz alleged a violation of both §1692e(3) based on the purported lack of meaningful attorney involvement in two letters that informed him Meyer, Njus & Tanick. P.A. ("MNT") had been retained to collect two separate debts Mr. Buchholtz owed Synchrony Bank. Citing unpublished district court cases from the Third Circuit, Mr. Buchholtz argues that he does not need to plead that he was injured by a misrepresentation concerning the level of attorney involvement; it is enough to plead that the letters were deceptive in a way that violates the statute. *See e.g. Napolitano v. Ragan & Ragan*, Case No. 15-2732, 2017 WL 3535025 (D. N.J. Aug. 17, 2017) ("[I]t is evident that Plaintiff alleges a particularized and concrete injury, namely that the debt collection letter sent to Plaintiff was allegedly deceptive by falsely implying that an attorney had meaningfully reviewed the case"), cited in Response at p. 6, ECF 16, PageID 83.

This case is pending in the Sixth Circuit, however. In *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) (a case that Mr. Buchholtz failed to mention, let alone distinguish) the Sixth Circuit held that, in order to plead facts to support his standing, a consumer is required to plead more than a debt collector violated a clear statutory obligation. A consumer must also allege that he was personally harmed by the violation in a manner that the FDCPA was designed to prevent. In *Hagy*, the debt collector failed to include the required §1692g disclaimers in a communication sent in connection with the collection of a consumer debt. Obviously, the failure to include the disclaimer language was a violation of a statutory right and it is possible that a consumer ***could*** be injured by the lack of disclaimers. However, the plaintiff in *Hagy* failed to plead facts to suggest that *he* was injured by the omission of the disclaimer and, therefore, failed to plead facts that established he had standing.

District courts in this Circuit reached the same conclusions in *Cheslek v. Asset Acceptance Capital Corp.,* Case No. 16-CV-1183, 2017 WL 7370983 (W.D. Mich., December 22, 2017) and *Newman v. Encore Capital Group,* Case No. 16-CV-11395, 2017 WL 3479510 (E.D. Mich., August 14, 2017). Mr. Buchholtz attempts to distinguish these cases by noting that the alleged lack of meaningful attorney involvement was implicated in collection complaints rather than letters. *See* Response at p. 8, ECF 16, PageID 85. Mr. Buchholtz fails to argue why this distinction matters. Like Mr. Buchholtz here, the plaintiffs in those cases alleged, at most, vague injuries attendant generally to the debt-collection process, not specific, personal injuries caused by the alleged statutory violation:

> While Plaintiff makes vague reference in his Response to the harms of 'stress and out of pocket costs,' he does not identify the costs at issue, nor does he correlate the alleged harms to any allegations in his Amended Complaint. As Defendants point out in Reply (ECF No. 41 at PageID.890), any stress or expenses he incurred would have been the result of having to defend a lawsuit that was properly filed to collect the $3,468.71 debt that Plaintiff failed to pay, i.e., not a concrete injury 'fairly traceable to the challenged action of the defendant.'

*Cheslek,* 2017 WL 7370983 at *3.

Mr. Cheslek's "stress and out of pocket costs" are no different than Mr. Buchholtz's "undue anxiety" and, like Mr. Cheslek's "stress and out of pocket cost," Mr. Buchholtz's "undue anxiety" is not the type of injury that establishes standing to bring a claim under the FDCPA.

Finally, Mr. Buchholtz overstates the holding of *Lyshe v. Levy,* 854 F.3d 855 (6th Cir. 2017) by arguing that, because the FDCPA was designed to prevent injuries caused by misrepresentations made in connection with debt collection efforts, consumers who receive communications containing alleged misrepresentations have suffered an injury "which the statute was designed to redress." *See* Response at p. 5, ECF 16, PageID 82. Like Mr. Buchholtz, the

2205037

3

consumer in *Lyshe* alleged that he received a communication containing a misrepresentation and that he was injured by that misrepresentation. Nonetheless, the *Lyshe* court held that not every injury that arises from a misrepresentation creates standing under the FDCPA. *Lyshe,* 854 F.3d at 859. Indeed, the *Lyshe* court found the position advocated by Mr. Buchholtz "untenable." *Id.* The alleged injury in this case -- "undue anxiety" about being sued -- is a circumstance that naturally arises from **all** debt collection activity, activity that violates the FDCPA and activity that does not violate the FDCPA. *Harvey, supra.* It is not the type of injury the FDCPA was designed to redress and will not support standing.

B. **Mr. Buchholtz's allegations do not "nudge" his claim into the possible.**

Mr. Buchholz asserts that he has pled a claim under §1692e(10) and that MNT's motion did not address that claim. Mr. Buchholtz's First Amended Complaint is a one count complaint alleging violations of §1692e based on the alleged misrepresentation concerning the level of attorney involvement in his letters. If he fails to state a claim under §1692e(3) because his allegations do not suggest MNT's attorneys were meaningfully involved, he fails to state a claim under §1692e(10) based on the same theory. He does not even argue otherwise.

Moreover, Mr. Buchholtz's claim is premised on primarily out-of-circuit authority that pre-dates *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The case says nothing about what has to be pled to state a claim based on lack of meaningful attorney involvement. *See Clomon v. Jackson,* 988 F.2d 1314 (2nd Cir. 1994), cited in Response at pp. 10 - 11, ECF 16, PageID 87 - 88.

Further, Mr. Buchholz cited to *Napolitano v. Ragan & Ragan,* Case No. 15-2732, 2017 WL 3535025 * 7 (D. N.J. Aug. 17, 2017) for the proposition that allegations concerning the number of attorneys involved in writing the letter could be a relevant factor to stating a claim for

2205037

4

lack of meaningful attorney involvement. *See* Response at p. 11, ECF 16, PageID 88. The *Napolitano* court found that the plaintiff in that case failed to state a claim because the plaintiff relied primarily on the presence of an electronic signature:

> What underlies the 'meaningful review' requirement is the burden on a plaintiff to ultimately prove that the attorney who signed the collection letters failed to conduct the necessary review, and that the attorney's signature was merely placed by the defendant law firm as an abusive debt collection tactic. ***Therefore, at the pleading stage, Plaintiff, here, must allege some factual allegations to support her assertion that the electronic reproduced attorney signature implies that the attorney did not conduct a meaningful review of her files.*** While Plaintiff proposes additional allegations that, based upon information and belief, no attorneys were involved in reviewing her file before sending the collection letters, *see* Proposed Am. Compl., ¶¶ 32-36, all of those conclusory allegations are based on the presence of the electronically reproduced attorney signature in the collections letters, and nothing more.

*Id.* at * 9, emphasis added.

Here, Mr. Buchholz alleged MNT's attorney "must have" used an electronic signature [ECF 12 at PageID 49, ¶18] and that there is a barcode at the bottom of each letter [ECF 12 at PageID 49, ¶19]. Under the very authority Mr. Buchholtz's relied on in his Response, these allegations do not state a claim under §1692e. As for *Napolitano* court's comments on allegations concerning the number of attorneys involved in the collection process, the court noted:

> Like in *Barata*, Plaintiff does not allege how many collection letters were sent to other debtors, nor does she allege how many attorneys had worked on the letters, over what period of time. These types of allegations—if properly pled—could provide an impression that Defendant was sending out mass-produced collection letters with little or no review of the files in connection with those letters.

*Id* at * 9.

Mr. Buchholtz pled that the attorney who signed the letters addressed to him is the only attorney practicing in MNT's Michigan office and that it was unlikely that she spent 30 minutes

reviewing the file before sending the letters.[1] *See* ECF 12, PageID 50, ¶¶27, 28. There are no allegations concerning the number of letters sent or other relevant facts that would support an inference that MNT's attorneys did not sufficiently review the letters before sending them to Mr. Buchholtz.

Mr. Buchholz insists that the letters to him were "mass produced" and part of a "mass-produced collection campaign" but offers no hint as to what that means. Indeed, the allegation makes no sense with regard to these particular letters, which do not even demand payment but merely notify Mr. Buchholtz that MNT had been retained and advised Mr. Buchholtz of his rights under §1692g. See ECF 14-2, PageID 68, 14-3, PageID 70. The letters are nearly identical because the decades of FDPCA litigation left debt collectors wary of altering the language of §1692g lest they be accused of lack of clarity in advising debtors of their rights under the FDCPA. Strict compliance with §1692g should not be used to support a claim for lack of meaningful attorney involvement. It in fact demonstrates the opposite.

### C. Conclusion.

The letters to Mr. Buchholz contain truthful information concerning the debts Mr. Buccholtz owes and accurately conveys to him his rights under §1692g. The letters caused Mr. Buchholtz to feel anxious that he may be sued, which is a natural consequence of failing to pay debts. Mr. Buchholz has not stated a colorable claim under the FDCPA and failed to allege facts

---

[1] Mr. Buchholtz uses the assumption that 15 minutes is a sufficient time to satisfy the "meaningful review" standard because the court in *Boyd v. Wexler,* 275 F.3d 642, 645 (7th Cir. 2001) used fifteen minutes in a hypothetical example when analyzing an appeal from an order granting summary judgment in a case where the communications at issue contained a direct threat of litigation. There was no judicial finding that 15 minutes is the time necessary for an attorney to review a file prior to sending a letter like the letters MNT sent to Mr. Buchholtz in this case. Certainly the quality of the work is more significant that the quantity of time dedicated to review a file prior to notifying a debtor that MNT had been retained to collect a debt.

2205037

which, if true, demonstrate he has the requisite standing to bring a claim under the FDCPA. He has had two attempts to state a claim that warrants this Court's jurisdiction and he has failed to do so. His claim must be dismissed, accordingly.

                      Respectfully submitted,

                      MADDIN HAUSER ROTH
                      & HELLER, P.C.

                      */s/ Kathleen H. Klaus*
                      Kathleen H. Klaus (P67207)
                      Attorneys for Defendant
                      28400 Northwestern Hwy, 2nd Floor
                      Southfield, MI 48034
                      (248) 359-7520
                      kklaus@maddinhauser.com

Dated: September 26, 2018

---

### CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2018, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

                      */s/ Kathleen H. Klaus*
                      Kathleen H. Klaus (P67207)
                      Attorneys for Defendant
                      28400 Northwestern Hwy, 2nd Floor
                      Southfield, MI 48034
                      (248) 359-7520
                      Kklaus@maddinhauser.com

DATED: September 26, 2018